UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT APPLEGATE,

       Plaintiff,

v.                                  Case No:   2:17-cv-130-FtM-99MRM

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON and PARKER
HANNIFIN CORPORATION,

       Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court are:  Defendant's Motion for Final Judgment on the Administrative Record, filed on January 12, 2018 (Doc. 41); Plaintiff's Response thereto, filed on February 16, 2018 (Doc. 46); Plaintiff's Motion for Judgment on the Record, filed on January 16, 2018 (Doc. 44); and Defendant's Memorandum in Response thereto, filed on February 16, 2018 (Doc. 45).  For the reasons stated below, the Court respectfully recommends that Defendant's Motion for Final Judgment on the Administrative Record (Doc. 41) be **GRANTED** and Plaintiff's Motion for Judgment on the Record (Doc. 44) be **DENIED**.

---

[1]  Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.      Background

This is an action brought pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 *et seq.*  (Doc. 29 at 1 ¶ 1).  Plaintiff Robert Applegate alleges that

Defendants Liberty Life Assurance Company of Boston ("Liberty Life") and Parker Hannifin

Corporation ("Parker Hannifin") wrongfully terminated his benefits under a long-term disability

insurance policy ("LTD").  (Doc. 29 at 6 ¶¶ 31, 32).  Defendants claim that Plaintiff failed to

exhaust his administrative remedies and, further, that the decision to deny Plaintiff's LTD

benefits was correct and reasonably supported by substantial evidence of record.  (*See generally*

Doc. 41).

### A.      Procedural History

Parker Hannifin employed Plaintiff from February 1, 1993 through September 26, 2012.

(AR at 1).[2]  During his last years of employment, Plaintiff worked as an Inspector Technician.

(*Id.* at 1, 550-51).  At times while employed, Plaintiff participated in Parker Hannifin's LTD

group plan issued by Liberty Life and sponsored by Parker Hannifin.  (*Id.* at 846).  Plaintiff

suffered from low back pain that gradually worsened with pain radiating to the lateral aspects of

Plaintiff's right leg and foot.  (*Id.* at 631).  Plaintiff sought a spinal cord stimulator on September

27, 2012.  (*Id.* at 631-32).

Plaintiff applied for and began receiving Short Term Disability benefits, beginning on

September 27, 2012, and ending on March 27, 2013.  (*Id.* at 490).  When these benefits expired,

Plaintiff applied for and began receiving LTD benefits on March 26, 2013.  (*Id.* at 519).

The LTD plan provides:

> *During the first two years* after you qualify for LTD benefits, you are considered to
> have a qualifying disability if your medical condition prevents you from performing

---

[2] "AR" refers to the Administrative Record, filed under seal on June 22, 2017.  (Doc. 2).

the essential functions of your occupation, even with job accommodations Parker makes for you.  This means you are unable to perform the functions normally required of your occupation in the national economy.

(*Id.* at 793 (emphasis in original)).  Thus, Liberty Life approved LTD benefits "based on [Plaintiff's] inability to perform the duties of his occupation."  (*Id.* at 519).  The LTD plan paid Plaintiff 66 2/3% of his pre-disability earnings less benefits from other income.  (*Id.*).[3]

Issues arose after the first two years ended.  The LTD plan provides:

*After two years* of eligibility for LTD benefits, your disability is considered to be a qualifying disability only if you are unable to perform the essential functions of your occupation or any other occupation for which you are or could, with minimal training, become qualified.  In determining if you are able to engage in any other occupation, the claims administrator considers your:
- Education (level and type of education required to perform the occupation),
- Training (fully trained or only in need of the training normally provided to a qualified individual entering this position as a new hire or internal transfer),
- Experience (relevant work experience that equals or exceeds the occupation requirements), and
- Medical ability (ability to perform the essential functions of the occupation with, or without, reasonable accommodation).

(*Id.* at 793 (emphasis in original)).

On February 11, 2015, Liberty Life notified Plaintiff by letter that it completed a thorough review of his eligibility for benefits and decided that he was no longer eligible for LTD benefits beyond March 27, 2015.  (*Id.* at 156).  Liberty Life considered office visit notes from Dr. Richard Hood dated April 24, 2013 through October 15, 2014, as well as office visit notes from Dr. Dean Lin dated October 4, 2012 through October 25, 2012.  (*Id.* at 157).

Liberty Life then referred Plaintiff's file to an independent physician for review who found Plaintiff capable of performing full-time work with certain restrictions and limitations.

---

[3]  On September 23, 2013, the Social Security Administration awarded Plaintiff disability benefits beginning in March 2013.  (AR at 413).

(*Id.*).  Liberty Life also referred Plaintiff's file to a Vocational Specialist to conduct a vocational analysis of Plaintiff's abilities.  (*Id.*).  The Vocational Specialist determined that Plaintiff was capable of performing the following occupations:  Assembler, Small Parts; Assembler, Electromechanical, Small Parts; Security Reception/Badge Checker; Cashier; and Information Clerk.  (*Id.* at 158).  Liberty Life informed Plaintiff that he may "request a review of this denial by writing" to Liberty Life within 180 days from receipt of the February 11, 2015 letter, and must state the reasons Plaintiff felt the claim should not have been denied along with documentation to support his assertions.  (*Id.* at 158-59).

By letter dated August 6, 2015, Plaintiff appealed the February 11, 2015 decision to deny benefits.  (*Id.* at 146).  The August 6, 2015 letter states:

> Please accept this letter as the appeal of Mr. Applegate's LTD claim, which was denied on February 11, 2015.  I would also like to request that you delay reviewing Mr. Applegate's claim until approximately August 28, 2015, while I am trying to obtain additional medical information from Mr. Applegate's treating physician.  If you have any questions, please do not hesitate to contact me.  Thank you.

(*Id.*).  Plaintiff submitted office visit notes dated March 18, 2015 through July 9, 2015 from Dr. Hood.  (*Id.* at 79).  Plaintiff also submitted an office visit note dated September 12, 2015 and a medical source statement dated October 12, 2015 from Dr. Alan Tannenbaum.  (*Id.*).

On November 5, 2015, Liberty Life sent Plaintiff's counsel a letter stating that it reviewed Plaintiff's request for "reconsideration of Robert Applegate's claim for Long Term Disability ("LTD") benefits and [has] maintained the decision to deny benefits beyond March 27, 2015."  (*Id.* at 78).  In this letter, Liberty Life stated that it had referred Plaintiff's file to an independent physician, Dr. Howard Grattan, for review.  (*Id.* at 79-80).  Dr. Grattan determined that Plaintiff "would have the capacity to maintain full-time employment within the restrictions and limitations outlined above."  (*Id.* at 80 (emphasis omitted)).  After Dr. Grattan's medical

review, Liberty Life also engaged a vocational consultant to review Plaintiff's claims.  (*Id.* at 81).  This vocational consultant "confirmed that the previously identified occupations remained viable alternatives based on the capacities outlined by Dr. Grattan."  (*Id.*).  Liberty concluded that "[h]aving carefully considered all of the information submitted in support of Mr. Applegate's claim, our position remains that proof of his continued disability in accordance with the Plan provisions after March 27, 2015 has not been provided, and our original decision to deny benefits beyond that date is therefore upheld."  (*Id.*).

The November 5, 2015 letter set forth procedures to request a review of the denial if Plaintiff disagreed with the decision.  (*Id.* at 82).  Specifically, this letter provided:  "If Mr. Applegate disagrees with this denial, he may make a written request to Liberty Life Assurance Company of Boston.  He may submit any additional information or comments he deems pertinent for review.  All requests must be made in writing within 60 days of the date of this letter."  (*Id.*).

On January 4, 2016, Plaintiff's counsel sent a letter to Liberty Life stating the following:  "This letter is in response to your denial letter dated November 5, 2015.  The letter provides that additional information pertinent to review maybe [sic] submitted within 60 days of the denial letter.  I would like to request [an] additional 10 days to submit additional evidence from Mr. Applegate's treating physician, Richard Hood, M.D."  (*Id.* at 64).  Liberty Life wrote a letter in response dated January 13, 2016.  (*Id.* at 47).  In this letter Liberty Life stated the following:  "Please be advised that the LTD plan under which Mr. Applegate is covered is a self-insured plan sponsored by his employer, Parker Hannifin Corporation, for which Liberty Life Assurance Company of Boston ("Liberty Life") provides administrative services only.  We have confirmed

with Parker Hannifin Corporation that they will not permit the extension requested in your

January 4, 2016 letter." (*Id.*).

Plaintiff sent a second Letter dated January 14, 2016. (*Id.* at 49). In this Letter, Plaintiff

requested a second extension of twenty (20) days to submit additional evidence, stating the

following:

> Please grant our office a second extension of time in which to submit additional
> evidence in this case. We previously requested our first extension on 01/04/16. We
> are still waiting for Dr. Hood's office to send us the additional evidence. We are
> keeping this in strict follow up. [sic] Please grant and [sic] additional twenty (20)
> days to submit additional evidence. This will make our new deadline February 3,
> 2016 to submit our additional evidence in this case.

(*Id.*). On January 15, 2016, Liberty Life responded stating that it was unable to grant Plaintiff's

request for a second extension of time to submit additional evidence. (*Id.* at 45). Liberty Life

also stated, "[a]s outlined in our January 13, 2016 letter (copy attached), Parker Hannifin

Corporation, the self-insured Plan Sponsor, will not permit an extension." (*Id.*).

On January 29, 2016, Plaintiff sent another letter to Liberty Life attaching a medical

opinion from Dr. Hood, showing that Plaintiff is unable to perform even sedentary work. (*Id.* at

37). Plaintiff then stated:

> Your denial letter dated November 5, 2015, stated that Mr. Applegate may submit
> a response to the denial within 60 days. The denial letter did not state that Mr.
> Applegate may seek judicial review of the claim under the ERISA. On January 4
> and January 15, 2016, I requested additional time to provide a response to your
> denial letter with evidence from Dr. Hood. You refused to permit an extension.
> Nonetheless, I ask that you reopen and reconsider Mr. Applegate's claim in light of
> the evidence provided by Dr. Hood.
>
> I ask that you notify me if you intend to reopen the claim and reconsider it in light
> of the evidence from Dr. Hood by February 12, 2016. If you do not respond by the
> said date, I will assume that you have denied the request and will seek judicial
> review.

(*Id.*).  On February 2, 2016, Liberty Life sent a letter in response.  (*Id.* at 35-36).  After summarizing the prior letters and responses, Liberty Life stated:  "Mr. Applegate has failed to properly exhaust his administrative right of appeal.  Therefore, Liberty is unable to accept or review any additional documentation with regard to his claim.  His claim will remain closed and no further review will be conducted by Liberty Life Assurance Company of Boston."  (*Id.* at 35).

### B.    Medical History

On September 27, 2012, Plaintiff went to Richard K. Hood, M.D. for low back pain that gradually worsened from moderate to severe with sharp, stabbing pain.  (*Id.* at 631).  The back pain was aggravated by standing and relieved by a change in position, heat, ice, and medication. (*Id.*).  Plaintiff saw Dr. Hood for a spinal cord stimulator trial.  (*Id.*).  Plaintiff continued to visit Dr. Hood's office approximately every four to six weeks for refills of prescription pain medication from January 2013 through December 2014.  (Doc. 41 at 5 (citing AR at 186-215, 349-82, 458-69, 501-505); AR at 168).  Plaintiff's visits to Dr. Hood and Angella Benson, ARNP in 2015 show Plaintiff suffers from back pain and muscle weakness.  (Doc. 44 at 5 (citing AR at 117-139)).  Plaintiff also had a stooped posture, was limping with antalgic gait, and used an assistive device to ambulate.  (Doc. 44 at 5 (citing AR at 118, 122, 127, 132, 137)).  In addition, Plaintiff reported pins and needles and numbness in his right foot and had reduced strength in his right lower extremity.  (AR at 117, 118, 121, 122, 127, 130, 132, 135, 136, 137).

On September 21, 2015, Plaintiff went to Alan Tannenbaum, M.D. for a medical evaluation.  (AR at 96-100).  Plaintiff complained of lower back pain.  (*Id.* at 98).  On examination, Dr. Tannenbaum found back pain, backache, joint pain, joint stiffness, muscle weakness, and physical disability.  (*Id.*).  Dr. Tannenbaum assessed Plaintiff with chronic pain. (*Id.* at 100).

On October 12, 2015, Dr. Tannenbaum completed a Medical Source Statement.  (*Id.* at 101-103).  Dr. Tannenbaum determined that Plaintiff could occasionally lift less than 10 pounds.  (*Id.* at 101).  Dr. Tannenbaum supported this limitation by stating that Plaintiff uses a cane to walk and has an implant.  (*Id.*).  Dr. Tannenbaum found Plaintiff could stand and/or walk for less than 15 minutes and can sit for 1 hour, but needs to move up and around and then lie down.  (*Id.*).  Further, Dr. Tannenbaum opined that Plaintiff could climb, balance, stoop, bend, kneel, crouch, and crawl for less than 1/3 of a workday, had no manipulative and visual limitations, but would need a break every 10 minutes for 10 minutes.  (*Id.* at 101, 102).  Dr. Tannenbaum also found Plaintiff needed to elevate his legs above his heart and needed to use a cane or other assistive device to ambulate.  (*Id.* at 102).  He also found Plaintiff had limitations due to chronic pain and Plaintiff must lie down during the day to relieve pain.  (*Id.*).  Due to Plaintiff's pain medications, Dr. Tannenbaum found Plaintiff could concentrate, follow simple instructions, carry out simple instructions, remember simple instructions, understand simple instructions, use judgment, respond to supervisors, and deal with changes less than 1/3 of the workday.  (*Id.*).  He found Plaintiff would be off work tasks more than 60% of time and would be absent from work three (3) days per month.  (*Id.*).  Dr. Tannenbaum opined that Plaintiff uses a cane to ambulate secondary to leg weakness and has poor lower extremity stability.  (*Id.* at 103).  Dr. Tannenbaum recommended an ambulatory device or a wheelchair.  (*Id.*).

On January 19, 2016, Dr. Hood completed a nearly illegible medical source statement.  (*Id.* at 40-43).  Plaintiff claims that Dr. Hood determined Plaintiff "would be unable to perform sedentary work because he requires breaks five minutes long for every 10 minutes worked due to

chronic pain.  (AR 43)." (Doc. 44 at 8).[4]  Although not clearly legible, it appears that Dr. Hood stated this limitation in his supplemental questionnaire.  (AR at 43).

### C.    Peer Reviews

Prior to the November 5, 2015 denial letter, Liberty Life engaged two independent medical professionals to complete Peer Review reports.  (*Id.* at 85-92; 168-73).  A summary of these two reports follows.

#### 1.    Peer Review Report by Dr. Graham

On January 26, 2015, Todd A. Graham, M.D. completed a Peer Review report.  (*Id.* at 168-73).  Prior to completing the report, Dr. Graham contacted Dr. Hood's office repeatedly to obtain a copy of certain medical notes, but Dr. Hood never returned Dr. Graham's calls.  (*Id.* at 168).  After a review of Plaintiff's medical records, Dr. Graham determined that Plaintiff has chronic low back and right foot complaints.  (*Id.* at 171).  Dr. Graham determined that the diagnoses that cause Plaintiff's impairments include lumbar degenerative disc disease, chronic low back pain, and RDS of the right foot, with the lumbar symptoms causing more impairments than the right foot symptoms at this point.  (*Id.* at 172).  Dr. Graham found Plaintiff has been on long-term narcotics for several years.  (*Id.* at 171).  Dr. Graham noted that Plaintiff had a spinal cord stimulator implanted and, despite this, Plaintiff continues to have residual pain and takes OxyContin, Percocet, Amitriptyline, and Baclofen and tried Gralise, which provided good relief for his spasms.  (*Id.*).

Based upon the medical records provided, Dr. Graham determined that Plaintiff has the following limitations:

---

[4]  Dr. Hood completed his January 19, 2016 report after the sixty (60) day time period to appeal the November 5, 2015 denial of the claim.  (AR at 78-82).

[Plaintiff] may push, pull and/or lift 20 pounds frequently and 40 pounds occasionally. Occasional reaching and lifting below waist level. No restrictions on reaching and lifting at waist level or above shoulder level. May sit for one[-]hour intervals, maximum of six hours per shift. May stand for one[-]hour intervals, maximum of five hours per shift. May walk for one[-]hour intervals, maximum of five hours per shift. Occasional climbing, crawling, kneeling, squatting, stooping and/or crouching. No restrictions on gripping, grasping, fingering, keying or fine manipulation.

The claimant is capable to sustain fulltime work 8 hour shifts, 40 hours per week.

(*Id.* at 171). Dr. Graham found that the medical evidence did not support any side effects from Plaintiff's medications. (*Id.* at 172).

## 2.   Peer Review Report by Dr. Grattan

On October 22, 2015, Howard Grattan, M.D. completed a Peer Review report. (*Id.* at 85-92). After review of medical and other evidence of record, Dr. Grattan determined that Plaintiff continues to complain of lower back pain even after a spinal cord stimulator placement on October 15, 2012. (*Id.* at 86). Dr. Grattan noted that Plaintiff was treated on many occasions with medication management. (*Id.*). Dr. Grattan contacted Dr. Hood's office on multiple occasions, but never established contact with him. (*Id.* at 90).

Dr. Grattan determined that Plaintiff's limitations would impact his ability to function.

Dr. Grattan found:

From a physical medicine and pain perspective and from 03/27/15 forward the claimant can lift, carry, push and pull 10 pounds occasionally and 5 pounds frequently. He can walk and stand 10 minutes at one time up to 2 hours a day. The claimant can sit 60 minutes at one time up to 8 hours per day. The claimant should have the ability for positional changes as needed. He can occasionally bend, twist, kneel, and crouch. He would likely not have the ability for crawling and crouching. No climbing or working at heights. He should not operate heavy machinery. The claimant can reach overhead, at the waist without restriction. He can reach below the waist without restriction. He can finger, handle and feel without restriction. These restrictions and limitations should be reassessed within 3-4 months' time from the date of this report to assess his current level of function.

(*Id.* at 91).  Dr. Grattan determined that Plaintiff's medications do not have any adverse side effects that would impair Plaintiff's capacity to function.  (*Id.*).  Dr. Grattan concluded that "[t]he claimant would have the capacity to maintain full-time employment within the restrictions and limitations outlined above."  (*Id.* at 92).

> ### D.   Vocational Assessments

Liberty Life engaged vocational experts to evaluate Plaintiff's ability to work based on his limitations.  (*Id.* at 4, 160-62; 416-24).  A summary of the three relevant reports follows.

> #### 1.   Joyce Ryan's Vocational Assessment

On August 28, 2013, Ms. Ryan completed a LTD Vocational Assessment Report.  (*Id.* at 416,424).  After a review of Plaintiff's injury, medical history, background, education, computer experience, skills, work history, and behavioral observations, Ms. Ryan determined that Plaintiff was capable of performing sedentary work.  (*Id.* at 416-420).  Ms. Ryan found Plaintiff unable to return to his regular work, which is performed at the medium exertional level.  (*Id.* at 420).

Ms. Ryan opined that Plaintiff "continues to view himself as incapacitated and unable to work.  He apparently has a difficult time dealing with pain and discomfort, is not willing to try any other procedure or device for pain relief, and appears content to remain in a status quo existence."  (*Id.* at 423).  Ms. Ryan found Plaintiff was not ready to resume employment based on his continued level of pain.  (*Id.*).  Ms. Ryan found some inconsistencies between Plaintiff's statements and actions, namely, his alleged debilitating condition appeared inconsistent with:  (1) his lack of use of a shower chair; and (2) his ability to operate a motor vehicle with his right foot, which is the primary source of his pain.  (*Id.*).

### 2.     Lori Ashworth's Vocational Review

On February 9, 2015, Lori Ashworth completed a Transferable Skills

Analysis/Vocational Review.  (*Id.* at 160-62).  Ms. Ashworth relied on Dr. Graham's January 26,

2015 Peer Review report to determine Plaintiff's physical capacities.  (*Id.* at 160).  After

consideration of Plaintiff's physical capacities, education, work history, and transferable skills,

Ms. Ashworth found Plaintiff needed jobs that allow for a change in position from sitting to

standing.  (*Id.* at 161).  Ms. Ashworth determined that Plaintiff was capable of performing the

following jobs:  (1) assembler, small parts; (2) assembler, electromechanical, small parts; (3)

security reception/badge checker; (4) cashier (*e.g.*, parking garage, theater); and (5) information

clerk (*e.g.*, tourist center).  (*Id.* at 162).

### 3.     Vocational Note in Claims File

On October 26, 2015, Liberty Life requested an update to Lori Ashworth's previous

vocational reports dated December 9, 2014 and February 9, 2015.  (*Id.* at 4).  Vocational expert

Jason Miller entered a note in the claim file identifying the following occupations found in Ms.

Ashworth's evaluation:  (1) assembler, small parts; (2) assembler, electromechanical, small parts;

(3) security reception/badge checker; (4) cashier (*e.g.*, parking garage, theater); and (5)

information clerk (*e.g.*, tourist center).  (*Id.*).  Mr. Miller was asked to review the Peer Review

report completed by Dr. Grattan dated October 22, 2015 and, after review, to determine if

Plaintiff continued to be capable of performing the jobs listed by Ms. Ashworth.  (*Id.*).  Mr.

Miller briefly summarized Dr. Grattan's findings and then found, "[b]ased on the capacities

outlined by Dr. Grattan, all of the previously [] identified occupations remain viable.  Wages are

accurate for the time-period in question.  This information has been provided to the Appeal

Review Consultant.  This claim note will serve in lieu of a formal written report in this case

given no change from the prior review." (*Id.* (typeface modified from original)).  Against this backdrop, the Court turns to the issues raised by the parties in their Motions.

## II.      Exhaustion of Remedies

In this case, Liberty Life asserts that Plaintiff failed to exhaust his administrative remedies.  (Doc. 41 at 7-8, 11-12).  Specifically, Liberty Life claims that its November 5, 2015 denial letter "appropriately notified Plaintiff of the Plan's requirement that he submit his appeal in writing within a 60-day time period."  (*Id.* at 11 (citing AR at 78-82)).  Liberty argues that on the final day to appeal, rather than appeal, Plaintiff's counsel faxed a letter asking for an extension of time.  (*Id.*).  Liberty Life claims that Plaintiff conceded that "he failed to comply with the Plan's deadline in his final appeal when he failed to submit additional evidence by the January 4, 2016 deadline" as evinced by Plaintiff's January 29, 2016 letter.  (*Id.* at 11-12).  Specifically, Liberty Life argues that Plaintiff acknowledged his prior requests for extensions of time and then Plaintiff conceded, "[n]onetheless, I ask that you reopen and reconsider Mr. Applegate's claim in light of the evidence provided by Dr. Hood."  (Doc. 41 at 11-12 (citing AR at 38-43)).

Plaintiff argues that he timely submitted his request for review as shown by his January 4, 2016 letter.  (Doc. 44 at 11).  Plaintiff states that in this letter, he requested ten (10) additional days to submit evidence in support of his appeal.  (*Id.* at 11-12 (citing AR at 63)).  Plaintiff claims that because January 4, 2016 letter was in support of an appeal, this letter was "reasonably calculated to alert Defendant Liberty that the Plaintiff is appealing the Defendant's November 5, 2015, denial."  (*Id.* at 12).  Plaintiff argues that even if Liberty Life "refused to wait for additional evidence from Dr. Hood and the Plaintiff's letter provided nothing new, the Plaintiff's letter should have triggered another review on the part of Defendant Liberty."  (*Id.* at 13).

Plaintiff points to the fax coversheet that includes language that the request for extension of time is in support of "the appeal." (Doc. 46 at 3).

As a threshold matter, the Court must determine whether Plaintiff exhausted his available administrative remedies prior to filing suit in federal court. Even though the ERISA statute does not include an exhaustion requirement, "[t]he law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) (citations omitted). The Eleventh Circuit determined that compelling considerations require a plaintiff to exhaust administrative remedies prior to bringing a civil action. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). Some of these compelling considerations include: reduction of frivolous lawsuits due to administrative claim-resolution; minimization of costs of dispute resolution; enhancement of trustees' ability to carry out their fiduciary duties without judicial intervention; and prior, fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated. *Id.* (citing *Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985)). "As a result, we strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims in federal court with certain caveats reserved for exceptional circumstances." *Perrino*, 209 F.3d at 1315. Nonetheless, courts do have discretion "to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate." *Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).

### A.    Initiating Review or Appeal

The Court first addresses whether the language in Plaintiff's counsel's letters should have initiated a review and then turns to Plaintiff's alternate arguments concerning whether exceptional circumstances exist to excuse the exhaustion requirement in this case. In the

November 5, 2015 denial letter, Liberty Life states, "[i]f Mr. Applegate disagrees with this denial, he may make a written request to Liberty Life Assurance Company of Boston.  He may submit any additional information or comments he deems pertinent for review.  All requests must be made in writing within 60 days of the date of this letter."  (AR at 82).  On the sixtieth day after November 5, 2015, Plaintiff faxed his January 4, 2016 letter to Liberty Life that states, "[t]his letter is in response to your denial letter dated November 5, 2015.  The letter provides that additional information pertinent to review maybe [sic] submitted within 60 days of the denial letter.  I would like to request [an] additional 10 days to submit additional evidence from Mr. Applegate's treating physician, Richard Hood, M.D."  (*Id.* at 64).  The fax coversheet with the letter states, "ENCLOSED:  Letter requesting additional 10 days to submit evidence from Richard Hood, M.D., in support of the appeal."  (*Id.* at 63).

Plaintiff relies on *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823 (7th Cir. 1991), to support his position.[5]  Plaintiff cites to *Powell* for the proposition that an attorney's letter can be sufficient to initiate an administrative review, if:  (1) a reasonable procedure for filing a claim has not been established; (2) the content of the letter is reasonably calculated to alert the employer to the nature of the claim; and (3) the letter requests administrative review.  (Doc. 44 at 12 (citing *Powell*, 938 F.2d at 826-27)).  Liberty Life argues that it had established and implemented reasonable Plan procedures, making *Powell* inapplicable.  (Doc. 45 at 7).

The Court finds that the Plan here established a reasonable procedure for Plaintiff to request a review and set forth the procedure to file an appeal of a denied claim.  (*See* Tr. at 832-34).  The Plan provides that an individual "may appeal an initial claim decision by writing to

---

[5]  Other than attempting to distinguish *Powell*, Liberty Life cites to no authority to support its position.

your claims administrator." (*Id.* at 832). The time limit to file the first appeal of a denied claim is 180 days after receipt of the claim decision and the time limit to file a second appeal of a denied claim is 60 days after receipt of the claim decision. (*Id.*). Further, in a request for review or appeal, an individual may submit comments, documents, records, and other information relating to a claim. (*Id.*). Thus, the first requirement in *Powell* – that the plan did not establish a reasonable procedure – is not met here. Nonetheless, the Court finds *Powell* to be instructive as to the necessary content of any letter seeking a review or appeal.

In *Powell*, the plaintiff sued his former employer, alleging that his former employer discharged him to avoid paying his medical insurance and disability benefits. *Id.* at 824. The district court granted the employer's motion for summary judgment on the ground that the plaintiff had failed to exhaust his administrative remedies prior to filing suit. *Id.* The Seventh Circuit affirmed the district court's decision. *Id.* The plaintiff argued that a letter from his counsel to the employer "represented a reasonable attempt to initiate an administrative resolution of the charges." *Id.* at 826. The court held that "[a]n attorney's letter can be sufficient to initiate administrative review if a reasonable procedure for filing claims has not been established." *Id.* at 826-27. The court continued that not just any letter would do. *Id.* at 827. "The content of the letter must be reasonably calculated to alert the employer to the nature of the claim and request administrative review." *Id.* The court found that the letter by the plaintiff's counsel was a threat to bring suit and a request for additional information, but was not a demand for an administrative review. *Id.*

Similarly, this Court also finds *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1017 (5th Cir. 2009) persuasive and helpful. In *Swanson*, the plaintiff sued the Hearst Corp. Long Term Disability Plan. *Id.* The district court granted summary judgment to

the defendant on the grounds that the plaintiff failed to exhaust administrative remedies.  *Id.*  The

Fifth Circuit affirmed the decision.  *Id.*  The plaintiff argued that she exhausted her

administrative remedies because her counsel sent a letter as notice of her appeal within the time

period to appeal.  *Id.* at 1018.  This letter stated in relevant part, "[p]lease accept this letter as

notice of Debra Swanson's intention to appeal your decision terminating her benefits under the

above referenced policy.  Once we have had adequate time to review and supplement the record,

we will notify you in writing to proceed with Debra Swanson's administrative appeal under the

terms of the Plan."  *Id.* at 1017.  The court held that the language of this letter expressed an

intention to appeal, and included no factual or substantive arguments, and no evidence.  *Id.* at

1018-19.  The court concluded that "[t]here was accordingly nothing for Hartford to consider on

appeal" and the appropriate materials for her actual appeal did not arrive until three years later.

*Id.* at 1019.

By contrast, in *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 22 F. Supp.

2d 1390 (N.D. Ga. 1998), *aff'd*, 240 F.3d 982 (11th Cir. 2001), the court determined the contents

of a letter sufficient to initiate an appeal.  In *HCA*, HCA Health Services of Georgia, Inc.

("HCA") sued Employers Health Insurance Company ("EHI"), challenging its discount as a

violation of ERISA.  *Id.* at 1391.  The district court held that HCA was entitled to summary

judgment because EHI's interpretation of the group health plan was arbitrary and capricious and

advanced EHI's self-interest over the interests of the policy beneficiaries.  *Id.* at 1397.  On the

issue of exhaustion, EHI argued that HCA failed to exhaust administrative remedies prior to

bringing the action.  *Id.* at 1393.  EHI claimed that the letters sent by HCA were insufficient to

serve as a notice of appeal because they did not indicate an assignment of right to HCA and

because they did not request a review of the EHI decision.  *Id.*  The court determined that the

HCA letters included "all identifying information included by EHI in making its payment to HCA.  The letters sent to EHI stated the amount at issue, stated that HCA believed the discount was taken in error, and asked that the erroneous discount be remitted."  *Id.* at 1394.  The court held that these letters were sufficient to initiate an administrative review process.  *Id.*

Against this backdrop, the Court addresses Plaintiff's contention that Plaintiff's counsel's January 4, 2016 letter should have initiated a review.  Under the Plan here, clearly an attorney's letter may initiate an administrative review as demonstrated by Plaintiff's counsel's faxed letter dated August 6, 2015, which initiated the initial review of the benefits denial.  (*See* AR at 140-42; 156-59).  With that August 6, 2015 letter, Plaintiff's counsel enclosed updated records from Plaintiff's treating physician, included arguments as to how these records showed the denial was incorrect, and stated that Plaintiff, "therefore, disagree[s] with your denial letter and ask[s] that you reinstate Mr. Applegate's benefits."  (*Id.* at 141).  Liberty Life then initiated an initial review of the claim.  (*Id.* at 78).  Thus, the issue is not whether an attorney's letter may serve to initiate an appeal or review, but rather whether *the content* of the letter was sufficient to initiate a review.

In the January 4, 2016 letter at issue here, Plaintiff requests additional time to submit evidence from Plaintiff's treating physician.  (*Id.* at 64).  Specifically, the January 4, 2015 letter states, "[t]his letter is in response to your denial letter dated November 5, 2015.  The letter provides that additional information pertinent to review maybe [sic] submitted within 60 days of the denial letter.  I would like to request [an] additional 10 days to submit additional evidence from Mr. Applegate's treating physician, Richard Hood, M.D."  (*Id.* at 64).  Further, the fax coversheet with the letter states, "ENCLOSED:  Letter requesting additional 10 days to submit evidence from Richard Hood, M.D., in support of the appeal."  (Doc. 63).

The Court finds that Plaintiff's counsel's January 4, 2016 letter does not affirmatively state that he requests review or an appeal of the administrative decision.  (*Id.* at 64).  This letter contains no factual or legal arguments, it includes no evidence in support of a review, and it fails affirmatively to request a review or an appeal.  (*Id.*).  Thus, at the time of the January 4, 2016 letter, Liberty Life had no actual request for a review or an appeal from the Plaintiff, and Liberty Life had nothing more to consider on review beyond what it already had reviewed.

Further, the Court finds the language in the fax coversheet insufficient to initiate an administrative review.  The language in the letter and the fax coversheet taken as a whole may have suggested a *future intention* to file a request for review or appeal upon Plaintiff's receipt of additional evidence, but the letter does not facially purport to initiate or otherwise constitute the initiation of a review or appeal.  To illustrate, the January 4, 2016 letter stands in stark contrast with the August 6, 2015 letter that initiated the initial appeal of the February 11, 2015 denial.  Unlike the January 4, 2016 letter, the August 6, 2015 letter attaches additional evidence, contains arguments as to why the denial of benefits is incorrect, and requests reinstatement of benefits.  (*Compare id.* at 63-64, *with id.* at 140-42).  The January 4, 2016 letter contains none of these things.  (*Id.* at 64).  The Court finds that considering the January 4, 2016 fax coversheet and letter as a whole, these documents do not constitute a request for review.

Similarly – although sent after the sixty (60) day period expired – the Court finds Plaintiff's counsel's January 14, 2016 letter does not contain language specifically requesting a review or an appeal of the November 5, 2015 denial.  (*Id.* at 49).  The January 14, 2016 letter purported to request "a second extension of time in which to submit additional evidence in this case."  (*Id.*).  This letter references the January 4, 2016 letter stating that Plaintiff's counsel had "requested our first extension on 01/04/16."  (*Id.*).  Plaintiff's counsel indicates that he is "still

waiting for Dr. Hood's office to send us the additional evidence.  We are keeping this in strict

follow up [sic].  Please grant and [sic] additional twenty (20) days to submit additional evidence.

This will make our new deadline February 3, 2016 to submit our additional evidence in this

case."  (*Id.*).  This letter contains no language requesting a review or appeal, attaches no

additional evidence, and contains no arguments as to why Liberty Life's November 5, 2015

decision should be reviewed.  As with the January 4, 2016 letter, the Court finds that the January

14, 2016 letter, taken as a whole, does not constitute a request for review and, even if it did, it is

untimely.[6]

To be sure, Plaintiff's counsel's subsequent letter dated January 29, 2016 attached

additional evidence from Dr. Hood and asked that Liberty Life "reopen and reconsider Mr.

Applegate's claim in light of the evidence provided by Dr. Hood."  (*Id.* at 39).  Plaintiff's

counsel continued, "I ask that you notify me if you intend to reopen the claim and reconsider it in

light of the evidence from Dr. Hood by February 12, 2016."  (*Id.*).  Unlike Plaintiff's counsel's

prior two letters, this letter constituted a request for review, but it was well past the sixty (60) day

time period for review and, thus, untimely.

Based on the foregoing, the Court finds that Plaintiff failed to exhaust administrative

remedies by failing to request a timely review of the November 5, 2015 denial of benefits.  The

January 4, 2016 and January 14, 2016 letters, by their plain language, may have conveyed a

*future intention* to seek review or appeal after Plaintiff received additional evidence, but the

letters do not constitute actual requests for review or appeal.  Although the January 29, 2016

---

[6]  The parties dispute whether the sixty (60) day time period ended on January 4, 2016 or later,
depending on whether the sixty (60) day time period ran from the date of the November 5, 2015
letter or the date of receipt of this letter, which is allegedly November 13, 2015.  (*See* Doc. 45 at
3-4).  Either way, the January 14, 2016 letter was untimely.

letter would appear to constitute a request for review or appeal, it was facially untimely.  Thus, Plaintiff did not timely request a review of the November 5, 2015 denial letter, and did not exhaust administrative remedies.

### B.   Exceptional Circumstances

Next, the Court addresses whether Plaintiff has shown that exceptional circumstances exist to excuse the exhaustion requirement in this case.

Plaintiff's arguments on this point are two-fold:  (1) Plaintiff contends that Defendant's denial letter that required compliance within sixty (60) days from the date of the letter versus sixty (60) days from the date of receipt of the letter violates the regulations; and (2) Plaintiff argues that the sixty (60) day time period is unreasonable in that it does not allow Plaintiff sufficient time to obtain medical documents.  (Doc. 44 at 13-14).  The Court addresses each of these argument in turn.[7]

First, Plaintiff argues that Liberty Life's "rigid requirement to submit any additional [evidence] within sixty days of the date of its November 5, 2015, (AR [at] 70), denial letter was not in compliance with the regulations and was unreasonable."  (*Id.* at 13).  Plaintiff states that the regulations require the claim administrators to provide the claimants with at least sixty (60) days following *the receipt of the denial letter*, but here Liberty Life allowed Plaintiff only sixty

---

[7]  Plaintiff presents two (2) additional arguments that the Court finds unpersuasive.  First, Plaintiff claims that Liberty Life's statement that it will conduct no further review somehow proves that Plaintiff fully exhausted his administrative remedies.  (*Id.* at 12).  Plaintiff's strained reading of this language is simply not credible.  The Court reads Liberty Life's statement to say that Liberty Life will conduct no further review because it did not receive a timely request for review.  Second, Plaintiff claims that Liberty Life failed to follow the procedure set forth in the Summary Plan Description, which states that Liberty Life will review the claim "without regard to whether such information was submitted or considered in the initial benefit determination." (*Id.* at 13 (citing AR at 832)).  Plaintiff does not adequately explain how this argument potentially impacts the timing and exhaustion requirements under the terms of the Plan.  (*See id.*).

(60) days from *the date of the letter* to request an appeal.  (*Id.* (citing 29 C.F.R. § 2560.503-1(h)(2)(i); AR at 70)).  Thus, Plaintiff claims that Liberty Life's procedures were not reasonable.  (*Id.*).  Liberty Life responds that even if Plaintiff is correct, which Liberty Life does not concede, "a minor technicality of this nature did not deprive Plaintiff of meaningful access to the administrative claims procedure and therefore does not excuse Plaintiff's failure to comply with the deadline." (Doc. 45 at 3).

Regulations require that every plan must contain a procedure by which a claimant "shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination."  29 C.F.R. § 2560.503-1(h)(1).  The regulations further provide that a claimant shall have "at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination."  29 C.F.R. § 2560.503-1(h)(2)(i).  In this case, the November 5, 2015 letter provides that "[a]ll requests must be made in writing within 60 days of the date of this letter."  (AR at 82).  Thus, technically Liberty Life did not comply with the regulations.

Nonetheless, the law in the Eleventh Circuit is settled that "the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy."  *Perrino*, 209 F.3d at 1317; *see also Schwade v. Total Plastics, Inc.*, 837 F. Supp. 2d 1255, 1268 (M.D. Fla. 2011), *aff'd sub nom. Fla. Health Scis. Ctr., Inc. v. Total Plastics, Inc.*, 496 F. App'x 6 (11th Cir. 2012)).[8]

---

[8]  Generally, the Eleventh Circuit explained "that while the 'normal time limits for administrative appeal may not be enforced' against a claimant who receives an inadequate benefits termination letter, the 'usual remedy' should not be 'excusal from the exhaustion requirement, but remand to

Here, Plaintiff must show that the technical error regarding the time to request a review denied Plaintiff meaningful access to the administrative process. Plaintiff cannot. Plaintiff faxed the January 4, 2016 letter within the sixty (60) day time period, but as the Court found above, this letter was insufficient to initiate a review. Even if the Plaintiff's subsequent January 14, 2016 letter was timely, it too suffered from the same shortcomings because it was insufficient to initiate a review. Plaintiff's January 29, 2016 letter was far outside of either window – *i.e.*, sixty (60) days from the date of the letter or sixty (60) days from the date of receipt of the letter. Thus, Plaintiff has not demonstrated that Liberty Life's technical error as to the deadline to seek review or appeal denied Plaintiff meaningful access to an administrative remedy.

Second, Plaintiff argues that Liberty Life was required to establish reasonable procedures for administrative review and the procedure that requires sixty (60) days to submit evidence without allowing extensions of time, is unreasonable. (Doc. 44 at 14). Plaintiff claims this procedure is unreasonable because medical providers have up to sixty (60) days to provide patients with requested medical information pursuant to the Health Insurance Portability and Accountability Act ("HIPPA") regulations, 45 C.F.R. § 164.524(b)(2)(i)-(ii). (*Id.*). Thus, Plaintiff argues that obtaining timely medical records from Dr. Hood would be impossible. (*Id.*).

Liberty Life responds that HIPAA regulations requires covered entities to provide individuals with access to their health information within no more than thirty (30) days after the

---

the plan administrator for an out-of-time administrative appeal.'" *Perrino*, 209 F.3d at 1317-18 (citation omitted). In Plaintiff's Motion for Judgment on the Record, Plaintiff does not seek such relief. (*See generally* Doc. 44). The only request for a remand is in the last sentence of Plaintiff's Response wherein Plaintiff states without citation to authority or argument, "[i]n the alternative, the court should remand the case for further administrative proceedings." (Doc. 46 at 10). Even if the Court finds, which the Undersigned does not, that Liberty Life's violation denied Plaintiff meaningful access to an administrative remedy procedure, this cursory mention of remand as an alternative remedy is not facially sufficient to warrant or to justify a remand to the plan administrator for an out-of-time administrative appeal.

request, but does allow for a thirty (30) day extension under certain circumstances. (Doc. 45 at 4) (citing 45 C.F.R. § 164.524(b)(2)(i)(ii)). Liberty argues that the ERISA regulations require a plan's procedure to "[p]rovide claimants at least 60 days" to appeal the determination. (Doc. 45 at 4). Thus, Liberty Life claims that its procedure allowing sixty (60) days to request a review or appeal is reasonable. (*Id.*).

The Court finds that the Plan's procedures are reasonable. Given that the ERISA regulations allow for a time limit of "*at least 60 days* following receipt of a notification of an adverse benefit determination within which to appeal the determination," the Court is hard-pressed to find that the Plan's sixty (60) day time period is unreasonable. *See* 29 C.F.R. § 2560.503-1(h)(2)(i) (emphasis added).[9]

Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies under the LTD Plan. Further, the Court finds that exceptional circumstances do not exist to excuse the exhaustion requirement in this case. Thus, the Undersigned recommends that Defendants' Motion for Final Judgment on the Administrative Record (Doc. 41) be granted and Plaintiff's Motion for Judgment on the Record (Doc. 44) be denied for failure to exhaust administrative remedies. *See Counts*, 111 F.3d at 109 (affirming a grant of summary judgment for the plaintiff's failure to exhaust his administrative remedies before filing the ERISA action and also finding that the district court did not abuse its discretion in refusing to excuse that failure).

---

[9] The Court also notes that the additional evidence Plaintiff sought to submit with his January 29, 2016 letter was a report from Dr. Hood dated January 19, 2016. (AR at 40-42). January 19, 2016 was after the deadline to seek review. Thus, Plaintiff has not shown that the HIPPA sixty (60) day deadline impeded Plaintiff from being able to produce Dr. Hood's report because Dr. Hood completed and dated this report after the deadline to seek review.

Nevertheless, because the Undersigned is submitting this matter to the presiding District Judge by Report and Recommendation, the Undersigned will also address below the substance of the parties' arguments as to the ERISA claim in the event the District Judge rejects the Undersigned's recommendation concerning the administrative exhaustion requirement.

## III.    ERISA Review Standard

In its prior Order (Doc. 47), the Court set forth the standard of review in cases filed pursuant to ERISA.  (Doc. 47 at 3-4).  The Court recites it again here.  ERISA does not provide a standard of review for courts to review the benefits decisions of plan administrators or fiduciaries.  *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  As a result, the Supreme Court established two different standards of review depending upon the level of discretion afforded to the plan administrator under the terms of a plan.  *See Firestone*, 489 U.S. at 115; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-117 (2008).[10]  Specifically, the Court held that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Id.*  If, however, the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, then a denial of benefits is reviewed under an arbitrary and capricious standard.  *See id.*

_____

[10]  Previously, there was a third "heightened arbitrary and capricious" standard of review, but this was "implicitly overruled" by the Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  *See Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1359 (11th Cir. 2008).  After *Glenn*, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious."  *Id.* at 1360.

Based on the Supreme Court's guidance in *Firestone* and *Glenn*, the Eleventh Circuit developed a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions.  *See Blankenship*, 644 F.3d at 1354.  The steps are as follows:

(1)  Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

## IV.    Discussion

Plaintiff argues that the November 5, 2015 denial is wrong under both a *de novo* and arbitrary and capricious standard of review because Liberty Life did not perform a proper vocational analysis after it received and credited the opinion of Dr. Grattan.  (Doc. 44 at 14).

Liberty Life asserts that Plaintiff "mischaracterizes Liberty Life's claims file note dated October 26, 2015 (AR at 4) and erroneously asserts that Liberty Life failed to fully consider Plaintiff's restrictions as listed in Dr. Grattan's independent peer review."  (Doc. 45 at 7 (citing

AR at 85-92; Doc. 44 at 15)).  The Court addresses the *de novo* standard first and then turns to the arbitrary and capacious standard of review.

     **A.**     ***De Novo* Review of Liberty Life's Decision**

     At the first step, the Court must assess whether Liberty Life's decision to deny Plaintiff long-term benefits was wrong under the *de novo* standard of review.  The decision is wrong if the Court disagrees with that decision.  *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010).  "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision."  *Blankenship*, 644 F.3d at 1354.  If the decision is correct, the analysis ends and the Court grants judgment in favor of the administrator.  *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 673 (11th Cir. 2014).

     A claims administrator reviewing benefits eligibility under an "any occupation" standard need not obtain vocational evidence to prove that occupations are available for a plaintiff. *Richey v. Hartford Life & Accident Ins. Co.*, 608 F. Supp. 2d 1306, 1312 (M.D. Fla. 2009). Nonetheless, when a claims administrator employs a vocational expert to determine if suitable occupations exist, then the Court looks to whether the defendant was wrong in relying on the results of its employability analysis.  *Id.*  Further, "Courts have recognized a number of actions by an ERISA administrator that indicate the administrator abused its discretion.  For instance, the Supreme Court recognized that in an ERISA disability case, an administrator's failure 'to provide its independent vocation and medical experts with all of the relevant evidence' is a 'serious concern.'"  *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses, Walgreen Co.*, 942 F. Supp. 2d 1213, 1250 (M.D. Fla. 2013) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118-19 (2008)).  With this framework in mind, the Court addresses the parties' arguments below.

There is no dispute that Dr. Grattan's October 22, 2015 report showed that Plaintiff was more limited than in Dr. Graham's January 26, 2015 report. (*Compare* AR at 172, *with* AR at 91). Dr. Graham limited Plaintiff to pushing, pulling, and/or lifting 20 pounds frequently and 40 pounds occasionally, whereas Dr. Grattan limited Plaintiff to lifting, carrying, pushing, and pulling 10 pounds occasionally and 5 pounds frequently. (AR at 91, 172). Dr. Graham found Plaintiff may stand and walk for one-hour intervals, with a maximum of five hours per shift, whereas Dr. Grattan found Plaintiff could walk and stand 10 minutes at one time up to 2 hours per day. (*Id.*). Dr. Grattan included a requirement that Plaintiff be allowed positional changes and Dr. Graham did not. (*Id.*). Dr. Graham found Plaintiff could occasionally climb, but Dr. Grattan restricted Plaintiff to no climbing. (*Id.*).

Plaintiff argues that Liberty Life relied on vocational expert Lori Ashworth's evaluation that was completed prior to Dr. Grattan's Peer Review report and did not take into consideration Dr. Grattan's findings as to additional limitations. (Doc. 44 at 16-17).

Plaintiff mischaracterizes the administrative record. The November 5, 2015 letter includes the following statement: "Following the additional medical review by Dr. Grattan, another vocational consultant reviewed Mr. Applegate's claim. He confirmed that the previously identified occupations remained viable alternatives based on the capacities outlined by Dr. Grattan." (AR at 81). The claim file reflects that on October 26, 2015, Liberty Life requested an updated vocational report that included a review of Dr. Grattan's Peer Review report. (*Id.* at 4). Specifically, Liberty Life sought an update of vocational expert Lori Ashworth's February 9, 2015 report because she did not have the benefit of Dr. Grattan's Peer Review report. (*Id.* at 4). Vocational expert Jason Miller, provided that information and stated that "[b]ased on the capacities outlined by Dr. Grattan, all of the previously-identified occupations remain viable.

Wages are accurate for the time-period in question.  This information has been provided to the

Appeal Review Consultant.  This claim note will serve in lieu of a formal written report in this

case given no change from the prior review."  (*Id.* (typeface modified from original)).

Plaintiff argues that the statement that there is "no change from the prior review" is

incorrect and then includes all of the differences between Dr. Graham's Peer Review report and

Dr. Grattan's Peer Review report.  The Court finds that Plaintiff's argument takes Mr. Miller's

statement out of context.  Mr. Miller concludes that Plaintiff continues to be capable of

performing all of the previously listed occupations found by Ms. Ashworth, and there are no

changes to note from Ms. Ashworth's report regarding Plaintiff's ability to perform these

occupations.  Liberty Life did not, as Plaintiff argues, rely on Ms. Ashworth's vocational report

without first engaging Mr. Miller to verify that Plaintiff continues to be able to perform the

occupations listed by Ms. Ashworth, even with the additional limitations found by Dr. Grattan in

his Peer Review report.  Thus, the Court finds that Mr. Miller considered Dr. Grattan's medical

report prior to opining as to Plaintiff's ability to perform the jobs listed by Ms. Ashworth.

Next, Plaintiff specifically argues that one key requirement identified by Dr. Grattan, but

not by Dr. Graham, is the need for the use of an assistive device to ambulate.  (Doc. 44 at 17).

Liberty Life disagrees, asserting that Dr. Graham's report "specifically notes that Plaintiff's

medical records from January 30, 2013 indicate he is 'using a cane with his right hand.'"  (Doc.

45 at 8 (citing AR at 176)).  Dr. Graham mentioned that on January 30, 2013, Plaintiff used a

cane with his right hand.  (AR at 176).  But again, the vocational expert, Mr. Miller, had the

benefit of and reviewed Dr. Grattan's report – including the need for an assistive device to

ambulate – and determined that Plaintiff was capable of performing the same occupations as

found by vocational expert Lori Ashworth.  (AR at 4).  Thus, Liberty Life is entitled to rely on

Mr. Miller's opinion in determining that Plaintiff is capable of performing the jobs listed in the November 5, 2015 letter.

The Court finds that Liberty Life properly weighed the evidence in the administrative record, including Dr. Grattan's Peer Review report and Mr. Miller's opinion as to Plaintiff's ability to perform work. Liberty Life properly relied on Mr. Miller's opinion to determine that Plaintiff is capable of performing the jobs listed by Ms. Ashworth, in her vocational report. The Undersigned finds that Liberty Life is not *de novo* wrong in its conclusion that Plaintiff can perform the jobs listed in the November 5, 2015 letter.

Under the Eleventh Circuit's six-step analysis, a finding that a claim administrator's decision is not *de novo* wrong ends the inquiry in favor of the claim administrator. *Blankenship*, 644 F. 3d at 1355. Nevertheless, the Court will proceed to the second and third steps of the inquiry to determine whether the decision was arbitrary and capricious.

### B.      Arbitrary and Capricious Review of Liberty Life's Decision

Plaintiff argues that Liberty Life "chose not to exercise [its] discretion concerning vital evidence in the case." (Doc. 44 at 10). Plaintiff cites to Liberty Life's January 13, 2016 letter and February 2, 2016 letter denying Plaintiff's request for an extension of time to submit additional evidence from Dr. Hood because the Plan Sponsor, Parker Hannifin will not permit it. (Doc. 44 at 10; AR at 47, 35-36). Plaintiff claims that these letters show that Liberty Life chose not to exercise its discretion on a critical aspect of the administration of this case. (Doc. 44 at 10).

In its prior Order, the Court determined that the Plan documents expressly vest discretionary authority in Liberty Life as the claims administrator to "determin[e] claims under the Plan." (Doc. 47 at 5 (citing AR at 802, 843, 846)). In fact, in responding to Liberty Life's

Motion to Determine Appropriate Standard of Review, Plaintiff appears to concede that the Plan vests Liberty Life discretion, stating "Defendant chose not to exercise the discretion given to it by the Plan." (Doc. 26 at 2). Thus, because the Plan expressly gives Liberty Life – as the claims administrator – the discretionary authority to determine LTD claims, the arbitrary and capricious standard of review should apply in this action absent some exception. *See HCA Health Servs.*, 240 F.3d at 993. (*See* Doc. 47 at 6). This Court previously found that Plaintiff has not shown that any exception applies to the rule that the arbitrary and capricious standard of review is appropriate to apply when a claims administrator has discretion under the Plan. (*Id.* at 9). Accordingly, the arbitrary and capricious standard applies in this case.

Because the Court finds the plan administrator had discretion, the Court moves to the third prong of the analysis; namely, whether "reasonable" grounds support the administrator's decision under a more deferential arbitrary and capricious standard. *Blankenship*, 644 F.3d at 1355. "Under the arbitrary and capricious standard of review, the court seeks 'to determine whether there was a reasonable basis for the [administrator's] decision, based upon the facts as known to the administrator when he or she made the decision.'" *Howard v. Hartford Life & Acc. Ins. Co.*, 929 F. Supp. 2d 1264, 1288 (M.D. Fla. 2013), *aff'd*, 563 F. App'x 658 (11th Cir. 2014) (citing *Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. App'x 971, 976 (11th Cir. 2008)). Thus, even if a claim administrator's decision is wrong, the decision will not be subject to reversal unless it is unreasonable. *Manning v. Johnson & Johnson Pension Comm.*, 504 F. Supp. 2d 1293, 1303 (M.D. Fla. 2007).

For the same reasons articulated above relating to the *de novo* review, the Court finds that Liberty Life's decision to terminate Plaintiff's LTD benefits is reasonable and not arbitrary and capricious. Liberty Life supported its decision to deny LTD benefits by relying on Mr. Miller's

vocational opinion – after he reviewed Dr. Grattan's Peer Review report – that Plaintiff was capable of performing the jobs listed by Ms. Ashworth.  (AR at 81).  Liberty Life weighed the evidence of record and supported its decision in the November 5, 2015 letter.  (*Id.* at 78-82).  It is not unreasonable, arbitrary, or capricious to rely on Mr. Miller's opinion that Plaintiff is capable of performing the jobs listed in the November 5, 2015 letter.

Under the arbitrary and capricious standard, the Court must next consider whether there is a conflict of interest.  *Blankenship*, 644 F.3d at 1355.  If a conflict exists, the conflict is "merely" a factor for the court to consider when determining if the administrator's decision was arbitrary and capricious.  *Id.*  The burden remains with Plaintiff to show that the decision was arbitrary and it is not the administrator's burden to prove that its decision "was not tainted by self-interest."  *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1288 (M.D. Fla. 2017); *see also Blankenship*, 644 F.3d at 1357.

Plaintiff asserts that Liberty Life is the plan administrator and Parker Hannifin is the entity that is responsible to pay any LTD benefits.  (Doc. 44 at 19).  Plaintiff argues that even though Liberty Life is not both the plan administrator and responsible to pay benefits, when Parker Hannifin refused to allow an extension of time to request a review of the November 5, 2015 decision, Parker Hannifin "operated under a conflict of interest as the entity responsible for paying benefits and exercising control over the decisions in the plaintiff's claim."  (Doc. 44 at 19).  Liberty Life asserts that Plaintiff failed to establish that a conflict of interest was a major factor in the decision to deny Plaintiff's benefits when considering the denial as a whole.  (Doc. 45 at 10).  The Court finds that Liberty Life considered and weighed the evidence of record and based its denial on this evidence.  Further, the Court is mindful that it need not determine that Liberty Life's decision was "absolutely correct in reality."  *See Blankenship*, 644 F.3d at 1357.

Based on the record as a whole, the Court determines that Liberty Life's November 5, 2015 denial of LTD benefits was based on reasonable grounds even assuming, *arguendo*, that a conflict of interest existed.  Accordingly, the Undersigned finds Liberty Life based its November 5, 2015 denial of LTD benefits on reasonable grounds and this determination was not arbitrary and capricious.

Accordingly, the Court finds that Liberty Life prevails even under the arbitrary and capricious standard.

## V.      Conclusion

Based on the foregoing, it is respectfully **RECOMMENDED**:

1)      Defendants' Motion for Final Judgment on the Administrative Record (Doc. 41) be **GRANTED**.

2)      Plaintiff's Motion for Judgment on the Record (Doc. 44) be **DENIED**.

Respectfully recommended in Chambers in Ft. Myers, Florida on July 24, 2018.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties